STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR
ASSOCIATION, RELATOR, V. ERNEST H. ADDISON AND
MICHAEL T. LEVY, MEMBERS OF THE NEBRASKA STATE
BAR ASSOCIATION, RESPONDENTS.

251 N. W. 2d 717

Filed March 23, 1977. No. 40444.

Original action. On motions of respondents for
judgment on findings and recommendation of ref-
eree. Judgment of reprimand and censure.

Paul L. Douglas, Attorney General, and Patrick T.
O'Brien, for relator.

David S. Lathrop of Lathrop & Albracht, and Paul
E. Galter of Galter & Geier, for respondents.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, MC-
COWN, CLINTON, BRODKEY, and WHITE, JJ.

PER CURIAM.

This is an original disciplinary proceeding brought
in the name of the State of Nebraska on relation of
the Nebraska State Bar Association against Ernest
H. Addison and Michael T. Levy, who are lawyers
duly admitted and licensed to practice their profes-
sion in this state.

A formal charge against respondents, Addison and
Levy, was filed in this court on November 3, 1975, al-
leging their violation of Rules DR 1-102(A)(1), (4),
(5), and (6), DR 5-103(A), DR 9-102(A), and DR 9-
102(B)(3) of the Code of Professional Responsibility
of the Nebraska State Bar Association; and also vio-
lations of their oaths as attorneys at law, as set out
in section 7-104, R. R. S. 1943.

The referee appointed herein held a hearing on the

matter and has filed his report with findings of fact and conclusions of law; and has recommended that the court reprimand each respondent for the conduct which was the subject of the formal charge. Relator has not filed exceptions to that report. Rule 9(1) of Article III of the Revised Rules of the Supreme Court of Nebraska (1974), provides: "Within ten days after the filing of such report, any party thereto may file written exceptions to such report. If no exceptions are filed, the court in its discretion may consider the findings final and conclusive, and on motion shall enter such order as the evidence and law require." More than 10 days having elapsed since the filing of the referee's report on December 21, 1976, each respondent filed a motion that an appropriate order and judgment should be entered by this court in conformance with the findings and recommendations of the said referee.

It appears from the record that the charges in question arose out of proceedings for dissolution of marriage between the petitioner, Danny L. Benak, and Susan K. Benak, the respondent, which action was filed on October 22, 1973, in Douglas County. Danny was represented by Attorney Levy, and Susan was represented by Attorney Addison. The decree entered by the court in that case provided, among other things, that the residence of the parties should be sold, and the net proceeds thereof delivered to Michael T. Levy and Ernest H. Addison as trustees. The trustees were directed to apply the net proceeds of the sale to satisfy, insofar as possible, the personal debts of the parties; and in the event the parties were unable to agree upon the disbursements of funds by said trustees, then the trustees were authorized to disburse the funds in their sole discretion as to those creditors who were to receive payment, and the amounts of said payments. In the event any funds remained from the sale of the residence after payment of the personal debts of the

parties, the parties were to be awarded the balance of said funds. The decree also provided that the petitioner (Danny) should assume and pay all joint debts of the parties existing as of October 22, 1973, and should hold respondent (Susan) harmless from any liability thereon. It was further provided that Danny should, within 30 days from the entry of the decree, pay to Susan, as alimony, the sum of $800; that Danny should pay to Ernest H. Addison, for his services rendered the respondent, the sum of $400; and also Danny should pay all taxable court costs.

The home was thereafter sold; and the net payout equity, in the amount of $4,169.29, was deposited in a bank account entitled "Michael T. Levy and Ernest H. Addison, Trustees." Sometime thereafter, the attorneys concluded that they, too, were creditors and were entitled to have attorneys' fees paid out of the trust funds. They set the respective amounts of such attorneys' fees in the sums of $1,500 for Addison and $1,000 for Levy, which sums were apparently in addition to expenses and fees previously paid to the respective attorneys. The parties to the action were apparently agreeable to the payment of the fees to the attorneys; and on March 27, 1974, they entered a joint stipulation for distribution of the trust proceeds in the amount of $4,169.29 for the payment of the attorneys' fees and expenses in question, and also the $800 alimony to Susan with the remainder, in the sum of $594.04, payable to Danny. The stipulation also provided that Susan should hold Danny harmless from any liability or contempt citation for failure to pay a creditor, Dial Finance Company, which held a security interest in household goods, furnishings, and fixtures. Susan and Danny signed the stipulation willingly and with knowledge of its provisions; and, in fact, appeared to be pleased with the distribution of funds.

The stipulation constituted a material change in the provisions of the decree in the dissolution action

of January 22, 1974. However, the stipulation itself was never filed in the court action, nor was it called to the attention of the trial judge for his approval. The record shows that Levy assumed that Addison would file the stipulation in the proceedings, and Addison concedes that Levy had the right to assume that he would do so, as he (Addison) had prepared and had possession of the stipulation. Addison's explanation for his failure to do so was that his secretary generally took care of all his filings of court papers. The secretary testified she didn't understand how she had failed to file the stipulation. Subsequently, in a "show cause" hearing before a different District Judge, both attorneys offered to, and in fact did, pay a portion of the amounts they had received into court. Those funds, consisting of $1,500 repaid from Addison and $1,000 repaid from Levy, apparently became assets in subsequent bankruptcy proceedings filed by the wife, Susan.

In his report the referee found that the decree of dissolution was materially altered by the stipulation in question, and that the stipulation, and the payment of funds pursuant thereto, was in violation of the decree; and the attorneys knew or should have known that the decree of dissolution could be modified in such a material or significant manner only by application to, and order by, the District Court. The referee further found that the attorneys had violated DR 1-102(A)(5), providing that a lawyer shall not engage in conduct that is prejudicial to the administration of justice; and also DR 1-102(A)(6), providing that a lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law; and finally that they had violated DR 1-102(A)(1), providing that a lawyer shall not violate a disciplinary rule.

The referee found that the attorneys did not violate DR 1-102(A)(4), providing that an attorney shall not engage in conduct involving dishonesty, fraud,

deceit, or misrepresentation; nor DR 5-103, forbidding the purchase of a proprietary interest in the cause of action; and also found that there was no violation of DR 9-102(A) or of DR 9-102(B)(3), requiring the maintenance of separate bank accounts and records. The court found a technical violation of DR 1-102(A)(6), but also found that the same acts constituted a violation of DR 1-102(A)(5). Finally, the referee found that the attorneys had violated their oaths as attorneys at law, as set out in section 7-104, R. R. S. 1943.

In his recommendations, the referee found that the evidence indicated the lawyers had been in good standing and free from ethical complaints, save for the case at bar, and that they had exhibited an attitude of regret and remorse. The referee concluded that for an isolated, single offense, of a nature not demonstrating qualities of moral turpitude, censure or reprimand by the court would be appropriate. He recommended that the court reprimand each respondent for the conduct which was the subject of the formal charge. In the case In re Fahey, 8 Cal. 3d 842, 106 Cal. Rptr. 313 (1973), the Supreme Court of California stated: "Our standard of moral turpitude depends not on popular impressions but on the violator's own motivation as it relates to his moral fitness to practice law." Clearly we do not condone the conduct of the respondents in this case, even though done under a misconception of rights. Their conduct has demeaned not only themselves but also the high profession which they serve. We feel, however, that under the circumstances of this case such conduct does not constitute moral turpitude, does not characterize the respondents as unsuitable to practice law, and does not require the disbarment or suspension of either attorney.

We believe that the referee was correct in his findings of fact and conclusions of law, and also in his recommendation. We, therefore, enter a judgment

of reprimand and censure as to each of the respondent attorneys.

JUDGMENT OF REPRIMAND AND CENSURE.

CLINTON, J., dissenting.

I do not believe a reprimand is sufficient discipline in the light of the seriousness of the offense. For the violation of trust of which respondents are guilty, I would impose a suspension from the practice of law for a period of 6 months.

SPENCER, J., dissenting.

I believe censure and reprimand herein is too lenient a penalty for the gravity of the offense. I would at the very least impose a temporary suspension.

The conduct of counsel was a knowing violation of their fiduciary duty. They knew that as trustees they were directed to apply the net proceeds in a specific manner. The referee finds that no fraud was involved. In my judgment, the action of the attorneys was a fraud on the creditors who were to receive payment. There is no way that I could condone their actions.

The trial court appointed them trustees for a specific purpose. They then jointly agreed to convert a portion of the fund to their own use. As lawyers, they were bound to know they could not change the terms of their trust without the consent of the court. If they did not know that an agreement with their clients could not change the terms of their trust in this instance, they have no right to be in the practice of law.

The penalty imposed is merely a slap on the wrist. It is not fair to those we have punished in the past for no more serious violations.

I respectfully dissent from the majority opinion.